UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

OUMIE CEESAY,

           Plaintiff,

    -against-

DOCUMENT TECHNOLOGIES INC.,

           Defendant.

------------------------------------------------------------X

07 CV 11268

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, Oumie Ceesay ("Plaintiff" or "Plaintiff Ceesay"), by her attorneys, The Boyd Law Group, PLLC and through her Complaint against Document Technologies Inc. ("Defendant" or "Defendant DTI"), alleges as follows:

### THE PARTIES

1. Plaintiff Ceesay, is a resident of the State of New York.

2. Plaintiff Ceesay resides at 5 Bay Street, 3rd floor, Staten Island, NY 10304.

3. Plaintiff resided in the State of New York at all times relevant to this Complaint.

4. Plaintiff is of African National Origin, over the age of 40, and opposed to discriminatory practices.

5. Plaintiff is a black.

6. Defendant DTI is a document outsourcing company with clients including Fortune 500 Companies.

7. Upon information and belief Defendant DTI conducted substantial business in New York and had two offices in New York City during the time-frame relevant to this complaint.

### NATURE OF THE ACTION

8. This is a civil action brought against Defendant for age Discrimination, national origin and color discrimination, and retaliation. The action is brought seeking damages and

remedies for age discrimination and retaliation for complaining of same under The Age Discrimination in Employment Act (hereinafter "ADEA") of 1990, 29 U.S.C. 621 *et seq.*, the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, NYC Admin Code § 8-101 *et seq.* The action is brought seeking damages and remedies for national origin and color based discrimination and retaliation for complaining of same under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, (hereinafter "Title VII") 42 U.S.C. §§1981 *et seq.*, New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, ("hereinafter "New York Executive Law") and New York City Human Rights Law, NYC Admin Code § 8-101 *et seq* (hereinafter "New York City Human Rights Law").

9. Specifically, Defendant discriminated against Plaintiff Ceesay because of her age, by horribly and offensively harassing her, saying she was too old for her job, and firing her for her complaints about such harassment.

10. Similarly, Defendant discriminated against Plaintiff Ceesay based upon her national origin and color by treating her less favorably than similarly situated non-African, non-black employees, making comments consistent with this unfair stereotyping and by firing her for complaining about national origin based discrimination.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under 28 U.S.C. § 1331 for civil actions arising under the laws of the United States and 28 U.S.C. 1343 for actions under laws providing for the protection of civil rights.

12. Declaratory and injunctive relief are sought under 28 U.S.C. § 2201 *et seq.*

13. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

## ADMINISTRATIVE PREREQUISITES

14. Plaintiff Ceesay filed an Equal Employment Opportunity Commission

("EEOC") charge of discrimination against Defendant on or about January 25, 2007.

15. The EEOC mailed a right to sue letter to Plaintiff and the undersigned counsel on or about September 19, 2007.

16. A copy of this right to sue is annexed hereto as Exhibit A.

17. Plaintiff's filing is, thus, within the ninety (90) days required under the law.

FACTS

18. Plaintiff began working for Document Technologies, Inc. as a shift manager in December of 2003.

19. She was an exemplary employee and was promoted to the position of Production manager in April of 2003.

20. Plaintiff's salary at the time was $60,000.00 per year.

21. In November of 2005 Anthony Paolini (hereinafter "Paolini") was hired as Director of Operations.

22. He because Plaintiff's supervisor as a result.

23. On or about January 23, 2006, Paolini approached Plaintiff to let her know that DTI was taking steps to invest additional money and resources in the New York Office.

24. Plaintiff was excited about this prospect and told Paolini that she was anxious to receive training, along with her staff, on new scanning software and related computer-based applications.

25. Paolini checked Plaintiff's enthusiasm, commenting that Plaintiff was not ready for this new challenge.

26. He suggested that the job would not be right for Plaintiff and asked her to think about it.

27. Plaintiff was shocked and disappointed by this comment.

28. She did not know why Paolini would think that she was not ready for the new

work and challenges.

29. The next day, on or about January 24, 2006, Paolini approached Plaintiff again and asked her if she had thought about the last meeting.

30. Plaintiff said she still believed that she was ready for the new challenges and stated that she did not understand why Paolini did not agree.

31. Paolini told Plaintiff that he was the same age as she was and that he would not be able to handle the challenges.

32. Paolini stated that he and Plaintiff were both over forty, and that because of their age they were just too old to learn and operate the new computers and related technology.

33. Paolini specifically asked Plaintiff how old she was exactly, and suggested that she was 45 or 46 years old.

34. Plaintiff asked Paolini if he was suggesting that she was too old to do her job.

35. When Paolini indicated that he was, Plaintiff refuted this conclusion, which offended her.

36. Plaintiff further observed that other people in the office were over 40 and worked with technology including the tech manager named Jacob.

37. Paolini stated that these other workers were Russian and that Russians were smart with technology because it was "in their blood."

38. Paolini further stated that Africans, like Plaintiff, were behind in technology, though they were good at soccer.

39. He added that he knew this because he was a soccer coach.

40. Plaintiff was horribly offended by this unfair and prejudicial characterization of Africans and by the stereotyping in general.

41. Plaintiff told Paolini that national origin had nothing to do with her abilities, and asked to be excused from them meeting because she was upset and had tears in her eyes.

42. When Plaintiff returned to the meeting she told Paolini that she had taken a lot of technology classes and learned a lot regardless of her age and national origin.

43. She told Paolini that she could perform the job and asked if there had ever been problems with her work.

44. Paolini admitted that Plaintiff had always worked well, and that she knew more about technology than he did.

45. Paolini observed, however, that he did not need to know how to do the technological work, but only how to surround himself with people who did know how to do it because he was the boss.

46. Paolini stated that the Russian worker, Jacob, had promised to bring other Russians to work at DTI and that this would help him further.

47. Plaintiff protested, and told Paolini that she could and would do the computer work.

48. Plaintiff was rendered defensive enough by the discriminatory onslaught so that she mentioned she was in college majoring in graphic arts production – a computer related field.

49. She reiterated that her national origin and age had nothing to do with her ability to work.

50. Paolini remained stubborn about his stereotypes.

51. On or about January 25, 2006 Plaintiff was approached again and Paolini remarked that she was very emotional in their discussion the day before.

52. Paolini said that changes were going to be made at DTI and not everyone would be happy.

53. Plaintiff's job immediately got more difficult.

54. She was required to work from two different locations and was treated poorly.

55. This was clearly in retaliation for Plaintiff's complaints about being treated unfairly on the basis of her age and national origin.

56. Paolini remarked that another production manager named Tanuja was perfect because she was younger and more vibrant.

57. On or about March 26, 2006, Plaintiff expressed her concerns about age and national origin discrimination to the Human Resource Manager, Consuela Wilson ("Wilson").

58. Plaintiff specifically told Wilson about Paolini's comments about her age national origin – specifically telling her that Paolini felt that Russians were good at technology but Africans were not.

59. Wilson expressed surprise that Paolini would talk in such a way, and said that he should not do so.

60. Wilson did not correct the discrimination, however, and did tell Plaintiff that her job was at risk.

61. The next day Paolini confronted Plaintiff about her discussions with Human Resources.

62. He told Plaintiff that she was being transferred and demoted to a job with a salary of $45,000.00.

63. Paolini told Plaintiff that she should be grateful to have a job at all, and said if she did not take the new job she would be fired.

64. Plaintiff was shocked and distressed by this statement and broke down in tears.

65. This action was clearly in retaliation for her reporting efforts.

66. Not wanting to be fired, Plaintiff was forced to accept the new job.

67. In her new position, Plaintiff was consistently put-down by the Russian tech manager named Jacob.

68. She was not trained on the new software and, instead, was often told to make copies instead of perform the technology-based work she was hired to perform.

69. Plaintiff again contacted the HR manager, Ms. Wilson, but without result.

70. In fact, Ms. Wilson told Plaintiff that Paolini would not listen to the complaints and that the case was too big and complicated for her – suggesting that the Head of HR should be involved.

71. Plaintiff was put in touch with Jenny Cybul, HR Director, in attempts to resolve the problem.

72. HR came to DTI's New York Office in July and fired Paolini.

73. The next day Plaintiff was fired as well in retaliation for her complaints.

74. Plaintiff was offered a severance package in exchange for a release of all of her rights against DTI.

75. Plaintiff believed the discrimination and retaliation she suffered from must be addressed and rejected the package offered so that she could pursue this claim.

76. The above-referenced acts constitute age, color and national origin discrimination and retaliation under federal, state and local law.

77. The above-referenced acts are a representative sampling, but not an exhaustive list of all the acts of discriminatory harassment and retaliation that Plaintiff was subjected to.

**FIRST CAUSE OF ACTION**

**(Age Discrimination and Retaliation in Violation of the ADEA)**

78. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

79. Plaintiff is a qualified individual over the age of 40.

80. Defendant is an employer within the meaning of the ADEA.

81. Defendant harassed and treated Plaintiff unfairly because of her age and in

retaliation for her complaints about this treatment in violation of the ADEA.

82. Plaintiff is, thus, entitled to relief.

## SECOND CAUSE OF ACTION

**(Age Discrimination and Retaliation in Violation of New York State Executive Law)**

83. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

84. Plaintiff is a qualified individual over the age of 40.

85. Defendant is an employer within the meaning of the New York State Executive Law.

86. Defendant harassed and treated Plaintiff unfairly because of her age and in retaliation for her complaints about this treatment in violation of the New York State Executive law.

87. Plaintiff is, thus, entitled to relief.

## THIRD CAUSE OF ACTION

**(Age Discrimination in Violation of the New York City Administrative Code)**

88. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

89. Plaintiff is a qualified individual over the age of 40.

90. Defendant is an employer within the meaning of the New York City Administrative Code.

91. Defendant harassed and treated Plaintiff unfairly because of her age and in retaliation for her complaints about this treatment, in violation of the New York City Administrative Code.

92. Plaintiff is, thus, entitled to relief.

## FOURTH CAUSE OF ACTION

### (National Origin Discrimination and Retaliation in Violation of Title VII)

93. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if separately set forth herein.

94. Plaintiff is of African national origin.

95. Plaintiff was discriminated against because of her national origin and in retaliation for her complaints about such discrimination in violation of Title VII.

96. Plaintiff is, thus, entitled to relief.

## FIFTH CAUSE OF ACTION

### (National Origin Discrimination and Retaliation in Violation of New York State Executive Law)

97. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if separately set forth herein.

98. Plaintiff is of African National origin.

99. Plaintiff was discriminated against because of her national origin and in retaliation for her complaints about such discrimination in violation of New York State Executive Law.

100. Plaintiff is, thus, entitled to relief.

## SIXTH CAUSE OF ACTION

### (National Origin Discrimination and Retaliation in Violation of New York City Human Rights Law)

101. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if separately set forth herein.

102. Plaintiff is of African National origin.

103. Plaintiff was discriminated against because of her national origin and in

retaliation for her complaints about such discrimination in violation of New York City Human Rights Law.

104. Plaintiff is, thus, entitled to relief.

### SIXTH CAUSE OF ACTION

(Violation of 42 U.S.C. 1981)

105. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if separately set forth herein.

106. Plaintiff is of African National origin.

107. Plaintiff is black.

108. Plaintiff was discriminated against because of the color of her skin as prohibited by 42 USC 1981.

109. Plaintiff is, thus, entitled to relief.

WHEREFORE, while reserving the right to seek additional damages and plead additional causes of action as available, Plaintiff demands judgment against Defendant as follows:

A. A declaratory judgment in favor of Plaintiff Ceesay, against Defendant, declaring that Defendant has violated The ADEA and/or The New York State Executive Law and/or the New York City Administrative Code and/or 42 U.S.C 1981 by discriminating against and retaliating against Plaintiff based upon her age, national origin and race;

B. On all applicable causes of action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

C. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 13, 2007

THE BOYD LAW GROUP, PLLC

By: _____
Patrick J. Boyd (PB 0921)
Attorney for Plaintiff
230 Park Avenue, Suite 1000
New York, New York 10160
(212) 808-3054

# EXHIBIT A

Case 1:07-cv-11268-SHS    Document 1    Filed 12/14/2007    Page 12 of 13

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Oumie Cessay<br>5 Bay Street<br>2nd Floor<br>Staten Island, N.Y. 10304 | From: | Equal Employment Opportunity Commission<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2007-01543 | Esther Gutierrez | (212) 336-3756 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Spencer H. Lewis, Jr., District Director    9/19/2007 (Date Mailed)

Enclosure(s)

cc:
Consuela Wilson
Human Resources Manager
Document Technologies, Inc.
21 West 38th Street
Suite 500
New York, N.Y. 10018

Document Technologies, Inc.
Corporate Headquarters
Two Ravinia Drive
Suite 850
Atlanta, GA 30346